**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Hector M.L.,

Petitioner,

v.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**
Civil Case No. 26-4313 (MJD/DTS)

David Easterwood, et al.,

Respondents.

---

Soloman Daniel Steen, Contreras Edin Law, PA, Counsel for Petitioner.

Carl Berry, Assistant United States Attorney, Counsel for Plaintiff.

---

This matter is before the Court on Petitioner Hector M.L.'s Petition for Writ of Habeas Corpus ("Pet."). Petitioner raises 12 claims asserting violations of his constitutional and statutory rights and certain federal regulations. (Pet. ¶¶ 73-154.) Respondents counter that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2)(A) and challenge all of Petitioner's claims. (Doc. 5 at 2-25.)

## I. FACTS[1]

Petitioner is a citizen of El Salvador who entered the United States without inspection as a minor child with his mother on July 22, 2018. (Pet. ¶ 1.) On July 23, 2018, Petitioner was served an NTA that required him to appear before an immigration judge ("IJ") in Harlingen, Texas on a date and time "to be set." (Doc. 6-2 ("NTA").) Both Petitioner and his mother were "discretionarily released" into the United States. (Pet. ¶ 24.)

Petitioner is a derivative on his mother's timely-filed asylum application. (Id. ¶ 25.) In addition, his U.S.-citizen stepfather filed an I-130 petition for alien relative for Petitioner on January 27, 2023. (Id. ¶ 26.) Petitioner completed a background check and, pursuant to the asylum application, was granted a work permit that is authorized through July 11, 2027. (Id. ¶¶ 4, 27.) Petitioner has resided "peacefully" in this country with his family and has "submitted to

---

[1] Facts from the Petition not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

extensive biometric screening and background checks, including verification of his home address." (Id. ¶¶ 4, 115.)

On August 19, 2026, ERO in St. Paul received information from Homeland Security that Petitioner was convicted in the U.S. District Court for the District of South Dakota of illegal entry under 8 U.S.C. § 1325. (Doc. 6-1 ("I-213") at 2; Doc. 6-3 (judgment).) On September 2, Petitioner was arrested while attending an ICE check-in in Sioux Falls, S.D. (I-213 at 2; Doc. 6-4 (I-200 admin. warrant); Pet. ¶¶ 5, 28.) He is currently in ICE custody in the Kandiyohi County Jail. (Pet. ¶ 29.)

**A. Petitioner's Criminal History**

Petitioner's criminal history consists of (1) a 2021 South Dakota conviction for failure to stop accident-causing property damage; (2) a 2020 South Dakota conviction for reckless driving; and (3) the conviction for illegal reentry. (I-213 at 3.) For the reentry conviction, Petitioner was sentenced to time served. (Id.)

**B. Petitioner's Immigration History**

As discussed above, on July 23, 2018, the U.S. Border Patrol issued Petitioner an NTA. (Id. at 2.) On March 7, 2023, a Fort Snelling IJ administratively closed his case. (Id.) On January 2, 2026, DHS, Office of the Principle Legal Advisor in St. Paul filed a motion to re-calendar with the

Executive Office of Immigration Review. (Id. at 3.) An IJ granted the motion. (Id.) On June 16, 2026, an IJ administratively closed the case.[2] (Id.)

Petitioner filed his Petition for Writ of Habeas Corpus on October 6, 2026. The next day, the Court issued an Order to Show Cause. Respondents responded October 14 and Petitioner replied October 19.

## II. DISCUSSION

### A. Jurisdiction

---

[2] Administrative closure of an immigration case is "the temporary suspension of a case. Administrative closure removes a case from the immigration court's active calendar until the case is re-calendared. Re-calendaring places a case back on the immigration court's active calendar." 8 C.F.R. § 1003.18(c) (cleaned up).

On June 22, 2026, the Northern District of Texas granted a joint motion for entry of consent judgment and declared that the Administrative Closure Rule "is in excess of statutory authority and contrary to law"; that "no statute authorizes immigration judges to indefinitely administratively close or suspend adjudication of a case before them"; and that the Administrative Closure Rule is vacated. Texas v. Dep't of Just., No. 7:26-CV-00070-O, 2026 WL 1803245, at *1 (N.D. Tex. June 22, 2026). A group of appellants who were not parties to the original case filed an application for a writ of certiorari to the Supreme Court seeking a stay of the Northern District of Texas' decision after being denied a stay by the Fifth Circuit. See Baltimore, MD v. Texas, Sup. Ct. Case No. 26A500. On October 27, 2026, the application for a stay was denied. 2026 WL 3222208 (Mem). This decision does not affect the Court's resolution of Petitioner's case.

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (holding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States") (citing U.S. Const., Art. I, § 9, cl. 2). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to [noncitizens] outside of our geographic borders. But once a [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. Petitioner bears the burden to prove detention contrary to law by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. Petitioner's Release in July 2024**

Petitioner states that he was "discretionarily released" after arriving in the United States. The Court is unsure what, exactly, Petitioner means here. Usually, when the Court addresses the cases of noncitizens who have been released after some sort of encounter with DHS/ICE at the border, the noncitizens have documentation of a release on recognizance or an order of supervision. Here, neither party has submitted any document, other than the NTA, that was issued at the time Petitioner entered the country. That being said, Respondents do not challenge Petitioner's version of his entry. (See Doc. 5 at 1 ("Petitioner is a native and citizen of El Salvador that entered the United States unlawfully without inspection near Hidalgo, Texas on July 22, 2018.").)

**C. Effect of Avila v. Bondi on Petitioner's Claims**

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A), as confirmed by the Eighth Circuit in Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). (Id. at 7-9, 21, 25 (citations omitted).) Their arguments are all based on this mandatory detention requirement. While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on §

1225, Avila does not foreclose constitutional or statutory claims not raised in that case. The Court thus turns to Petitioner's constitutional arguments.

### D. Count I: Fifth Amendment Due Process

Count I of the petition is a claim for violation of Petitioner's procedural due process rights. (Pet. ¶¶ 73-83.) Petitioner applies the balancing test from Mathews v. Eldridge, 424 U.S. 319 (1976) to argue that his continued detention without an individualized hearing violates his constitutional due process rights guaranteed by the Fifth Amendment. (Id. ¶¶ 89-94)

Respondents state that Petitioner's due process claim fails for two reasons, both of which are grounded in their position that Petitioner is in mandatory custody pursuant to 8 U.S.C. § 1225(b)(2). Respondents argue that Petitioner is not entitled to an individualized hearing because Congress created a mandatory detention scheme that was upheld by the Supreme Court and Eighth Circuit, and that Petitioner's position would "effectively rewrite mandatory detention into discretionary detention." (Doc. 5 at 15-16.) They also assert that even if the Court applies the three-part balancing test in Mathews, Petitioner's claim still fails. (Id. at 17-24.)

**1. Petitioner's Fifth Amendment Due Process Protections**

Petitioner is entitled to due process of law under the Fifth Amendment, which provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The United States Supreme Court has declared that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

**2. Respondents' Reliance on Supreme Court and Eighth Circuit Case Law**

Respondents argue that Supreme Court and Eighth Circuit precedent confirm that mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) satisfies due process. (Doc. 5 at 15 (stating that "[u]nfortunately for Petitioner, binding case law cuts" against him).) Respondents rely primarily on Jennings v. Rodriguez, 583 U.S. 281 (2018), Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020), Demore v. Kim, 538 U.S. 510 (2003), and Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024). The Court continues to be unpersuaded that these cases either resolve the due process question or preclude the Court's consideration of it at all.

First, the Court finds that Jennings is irrelevant to the issue facing the Court. The Supreme Court in Jennings did not reach the underlying due process question, so Respondents' reliance on it is misplaced. See 583 U.S. at 302–14.

Moreover, Thuraissigiam is similarly not on point. The Petitioner in Thuraissigiam did not raise a habeas corpus claim to challenge his detention; rather, he attempted to use the habeas process to seek review of his asylum claim. 591 U.S. at 140 ("[A]n alien in respondent's position has only those rights regarding admission that Congress has provided by statute."). The Thuraissigiam Court then did not "address whether the petitioner's detention itself was unlawful or inconsistent with the Due Process Clause and did not deal with a core habeas challenge to detention" like Petitioner here. R. M. v. Blanche, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306, at *6 (D. Minn. May 29, 2026).

Even if the Court's analysis in Thuraissigiam applied here, the case is still easily distinguishable on the facts. The petitioner in Thuraissigiam "was apprehended 25 yards from the border and was thereafter continuously detained," while Petitioner here has lived in the United States over eight years. Manuel G. v. Blanche, Case No. 26-CV-2385 (SRN/ECW), 2026 WL 1256358, at *4 (D. Minn. May 7, 2026). The Court is persuaded that the factual predicate for

Thuraissigiam, therefore, "merely reinforces [the] longstanding understanding that noncitizens on the threshold of initial entry stand on a different footing than those who have passed through our gates." Lopez-Campos v. Raycraft,175 F.4th 713, 733 (6th Cir. 2026) (citation omitted) (cleaned up).

Finally, Banyee and Demore do not preclude a procedural due process challenge because both cases considered a provision of the INA not at issue here. In Banyee, the Eighth Circuit determined that a noncitizen's continued detention during his pending appeal of a removal order based on a criminal conviction did not implicate due process. 115 F.4th at 933 (quoting Demore, 538 U.S. at 527) ("[T]he Government can detain an alien for as long as deportation proceedings are still 'pending.'") (emphasis omitted). The petitioner in Banyee had been detained pursuant to 8 U.S.C. 1226(c), which permits mandatory detention based on convictions for certain enumerated offenses, and specifically due to his conviction for robbery with a dangerous weapon, a "crime of violence," which qualified as an "aggravated felony" under § 1226(c). Id. at 930. While he appealed the IJ's determination that his conviction was a qualifying felony, the petitioner remained detained for over a year. Id. The petitioner filed a habeas petition, arguing that his continued detention violated due process. Id. at 930–31.

The Eighth Circuit denied his petition, determining that he was not entitled to a bond hearing pending his deportation. Id. at 931. The court reasoned that the length of his detention was not an issue, instead stating that "what matters is that detention pending deportation 'ha[s] a definite end point'— deporting or releasing the alien." Id. at 930, 932 (cleaned up) (quoting Demore, 538 U.S. at 528–29 (drawing the same definite-versus-indefinite distinction) (brackets in original); Zadvydas, 533 U.S. at 697).

Demore similarly involved a petitioner who had been convicted of at least one aggravated felony offense and argued that mandatory detention pursuant to § 1226(c) violated the Due Process Clause. 538 U.S. at 522–23. The Supreme Court rejected his argument, stating that Congress has "justifiab[le] concern[s] that deportable criminal aliens who are not detained [would] continue to engage in crime and fail to appear for their removal hearings." Id. at 513.

Although Respondents urge the Court to treat the two separate statutes as effectively identical because both require mandatory detention, the Court declines to do so. Petitioner here is detained pursuant to § 1225(b)(2), which governs applicants for admission to the country, not the materially different statutory scheme of § 1226(c), which governs individuals already deemed

removable based on convictions for serious criminal offenses. Although both statutes provide for mandatory detention under certain circumstances, the statutory schemes at issue require mandatory detention on considerably different factual bases. In enacting § 1226(c), Congress made specific, categorical judgments about the dangerousness and flight risks posed by noncitizens convicted of certain enumerated offenses. Due process concerns for detention under § 1226(c) "were mitigated because those noncitizens, as part of securing their criminal convictions, would have received the 'full procedural protections our criminal justice system offers.'" R. M., 2026 WL 1506306, at *4 (citing Demore, 538 U.S. at 513). That is not the case for Petitioner here.

This Court continues to maintain that there is no reason to read the Eighth Circuit's broad Due Process pronouncements in Banyee as anything but cabined to the statutory and factual context in which they arose. The Banyee court's analysis is rooted in detention under § 1226(c), and its reliance on Supreme Court precedent reinforces that limited scope. Demore similarly permitted mandatory detention tied to certain criminal convictions under § 1226(c), while Zadvydas established a presumptive permissible time period for the detention of those with post-removal orders. See Demore, 538 U.S. at 513; Zadvydas, 533 U.S. at

701. Petitioner's detention arises under a separate statutory provision with a different factual predicate and Petitioner is not subject to a final removal order. The Court is not alone in determining that the cases on which Respondents rely do not preclude Petitioner's due process claim. See, e.g., Axel J.M.C. v. Stanski, No. 26-cv-2281 (JRT/EMB), 2016 WL 1171344, at *3 (D. Minn. Apr. 29, 2026); Manuel G., 2026 WL 1256358, at *4; Juan C.M.C. v. Blanche, No. CV 26-2402 (JWB/ECW), 2026 WL 2117276, at *4 (D. Minn. July 22, 2026); Julio Victor R.R. v. Blanche, No. 26-CV-2853 (KMM/DJF), 2026 WL 2517137, at *4-5 (D. Minn. Aug. 26, 2026).

Consequently, the Court will now consider what due process requires in Petitioner's circumstances. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."); Bus. Commc'ns, Inc. v. U.S. Dep't of Educ., 739 F.3d 374, 380 (8th Cir. 2013). The flexibility of due process "calls for such procedural protections as the particular situation demands." Morrissey, 408 U.S. at 481. Thus, "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 335. The Court will therefore turn to an analysis of the three factors enumerated in Mathews.

### 3. The Mathews v. Eldridge Balancing Test

To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

#### a. The First Mathews Factor

Respondents contend that Petitioner's private interest is "insubstantial" because "detention without bond during the pendency of his removal proceedings does not implicate any fundamental rights." (Doc. 5 at 22.) They also argue that because "none of the rights alleged by Petitioner are cognizable," he "cannot be deprived of a liberty interest he does not possess." (Id. at 22-23.)

The Court disagrees. Petitioner's interest in being free from physical detention is the "most elemental of liberty interests." Hamdi, 542 U.S. at 529; Zadvydas, 533 U.S. at 690. "Petitioner's private liberty interest arises not from an interest in remaining in the United States, but from being free from physical

restraint." Felipe S.P. v. Blanche, No. 26-CV-2212 (NEB/DJF), 2026 WL 1911656, at *8 (D. Minn. July 2, 2026) (citing Zadvydas, 533 U.S. at 696). Here, Petitioner has spent eight years living in the United States and has built a life and community for himself. Petitioner has "a weighty interest due to his separation from his parents [and] loss of livelihood." (Pet ¶ 90.) This factor favors Petitioner.

**b. The Second Mathews Factor**

Although detention during removal proceedings is "constitutionally permissible[,] . . . the government's authority to detain noncitizens is not limitless." Jesus Alejandro G. A. v. Blanche, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026). Detention "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." Id. (citing Demore, 538 U.S. at 513; Zadvydas, 533 U.S. at 690)).

Respondents argue that Petitioner's removal proceedings will give him the "opportunity to make a case why he should be permitted to remain in the United States." (Doc. 5 at 23.) This argument misses the point; whether Petitioner is entitled to remain in the U.S. is a distinct legal question from whether the

government may detain him for an unknown amount of time without actually assessing whether his detention is necessary under the permissible regulatory goals. An opportunity to at some point contest his removal does nothing to address whether he poses the type of flight risk or danger to the community that warrants continued detention. Moreover, "[g]iven 'the extent and velocity of Respondents' immigration-related actions in Minnesota over the past several months,' there is a high degree of risk of the erroneous deprivation" of Petitioner's private rights. Manuel G., 2026 WL 1256358, at *4 (quoting Axel J.M.C., 2016 WL 1171344, at *4).

The Court agrees with Petitioner that detention without "notice, a showing of cause, or a meaningful opportunity to respond" creates a risk for the erroneous deprivation of liberty. (Pet. ¶ 91.) Continuous detention without an opportunity to be heard does not fulfill the promise of Zadvydas that every person in this country is entitled to due process of law. 533 U.S. at 693; see also Pedro A.D.L.O.O. v. Bondi, No. CV 26-1959 (DWF/DJF), 2026 WL 948970, at *3 (D. Minn. Apr. 8, 2026) (stating that "without an individual assessment, the risk of erroneous deprivation is high"). This factor weighs in Petitioner's favor.

**c. The Third Mathews Factor**

The third Mathews factor requires the Court to consider the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents state that they "have strong historical and practical interests in seeing Congress's will given effect," and "in the continued detention of [noncitizens] who pose a flight risk and danger to the community." (Doc. 5 at 23–24 (citing I-213 (listing Petitioner's criminal history)).)

While the Court acknowledges the strong governmental interest in enforcing immigration law and ensuring its uniform application, see Dep't of State v. Munoz, 602 U.S. 899, 903 (2024), the Court finds that such interest is "not subverted by requiring the minimal procedural safeguard of a bond hearing." Manuel G., 2026 WL 1256358, at *5. This is especially true when considering that other Courts of Appeals have reached the opposite conclusion from the Eighth Circuit in Avila, "Respondents are, therefore, already required to routinely offer bond hearings to people in identical circumstances . . . and requiring them to do so for him will not significantly change that landscape." Julio Victor R.R., 2026 WL 2517137, at *8 (collecting cases) (citations omitted). Moreover, a bond hearing will allow the immigration court to conduct the analysis that appears to

have been missing here to determine whether Petitioner is actually a flight risk and a danger to the community, something Respondents assert is imperative.

Granting Petitioner a bond hearing – which is hardly an "administrative burden"– will give both parties an opportunity to adequately present arguments posed by Petitioner's specific circumstances and will reduce the risk of erroneous deprivation of Petitioner's rights without a significant burden to Respondents.

**E. Remedy**

Mandatory detention pursuant to § 1225(b)(2) violates Petitioner's constitutional right to procedural due process. The remedy for this constitutional deprivation is an opportunity to be heard. Resolution of this issue renders discussion of other arguments unnecessary. See Faysal N. v. Noem, 825 F. Supp. 3d 844, 849 n.3 (D. Minn. Jan. 6, 2026).

## III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART as follows:**

1. Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

2. Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling[3];

3. Notice must give Petitioner reasonable time to prepare;

4. The Immigration Judge is prohibited from denying the opportunity for a bond hearing based on a purported lack of jurisdiction;

5. The Immigration Judge is ordered to re-calendar the case, if necessary, to allow the Immigration Court to hold this hearing;

6. If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

    a. Release Petitioner into Minnesota;
    b. At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and
    c. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

7. If a bond hearing does not take place within one week, Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in ¶ 6;

8. Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

9. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in

---

[3] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration law attorney to represent Petitioner at the hearing.

this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 28, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court